PEOPLE *ex rel.* JONES *v.* NEW YORK HOMŒOPATHIC MEDICAL COLLEGE AND HOSPITAL.

*(Superior Court of New York City, Special Term.   June 27, 1892.)*

MANDAMUS—TO MEDICAL COLLEGE—ISSUANCE OF DIPLOMA.

> Where the rules of a medical college leave it to certain medical experts to determine whether an applicant for a diploma has passed a satisfactory examination, and such experts decide adversely to an applicant, *mandamus* will not lie to compel the college to grant him a diploma, though bad faith on the part of the college officials is charged.

Application by Walter Jones for *mandamus* to the dean and faculty of the New York Homœopathic Medical College and Hospital to issue a diploma to him.

*Nelson G. Green,* for relator.   *Roger H. Lyon,* for respondent.

McADAM, J.   The relator became a student in the (defendant) college, which maintains a seat of learning in the city of New York under the authority of a special charter from the state.   The college neither expressly nor impliedly agrees to issue diplomas to its students, nor to confer upon them the right to practice medicine, unless the student has first satisfactorily passed certain preliminary studies, and his qualifications have been approved by the faculty and censors of the college, and unless he has been recommended by them to the board of trustees for graduation.   The relator claims that he performed all of the duties required of him, and passed all of his examinations, and that he is entitled to his diploma under the rules governing the college. These rules, in the nature of things, leave it to certain medical experts to determine whether the examination of the applicant has been satisfactorily passed or not, and these gentlemen have decided adversely to the claim of the relator.   His qualifications have not been approved by the faculty and censors of the college, and they have therefore declined to recommend him to the trustees for graduation; and the college has, in consequence, refused to grant him the privilege of practicing medicine.   This seems to be a complete answer to the application.

*Mandamus* will not issue in cases of doubtful right.   The legal right of the party to that which he demands in the writ must be clearly established. *People* v. *Board of Canvassers*, 129 N. Y. 360, 29 N. E. Rep. 345; *People* v. *Supervisors*, 11 N. Y. 563; *People* v. *Canal Board*, 13 Barb. 444; *Insurance Co.* v. *Wilson*, 8 Pet. 291; *Reeside* v. *Walker*, 11 How. 272.   The practice of medicine is one in which a person cannot engage unless authorized to do so by a license or diploma from some chartered school, etc.   Pen. Code, § 356; Laws 1874, c. 436.   The purpose of these acts was to protect the public from medical practitioners not possessing the qualifications required in their delicate calling to discharge the duties thereof.   Certifying to such qualifications is a responsible duty, cast by the law upon colleges, and it must be performed conscientiously in the interest of the public.   The case is unlike *People* v. *Perry*, 13 Barb. 206, where an application was made to compel the mayor of Albany to issue a license to the relator to carry on the vocation of booking emigrant passengers, and in which the writ was issued because the only discretion lodged with the mayor was whether the bond offered was satisfactory, and this had been passed upon in favor of the relator.   The court, while illustrating the question before it in that case, said: "The statute relating to excise, and the regulation of taverns, etc., besides requiring, as in this case, a bond satisfactory to the commissioners, declares that a license shall not be granted unless the commissioners are satisfied that the applicant is of good moral character; that he is of sufficient ability to keep a tavern; that he has the necessary accommodations to entertain travelers; and that a tavern is absolutely necessary for the actual accommodation of travelers at the place where

the applicant resides or proposes to keep the place.  1 Rev. St. p. 679, § 6. Under this statute no man can claim a tavern license as a matter of right until all these questions have been determined in his favor." See, also, *Ex parte Persons*, 1 Hill, 655, and *People* v. *Commissioners*, 7 Abb. Pr. 34. Courts may be versatile, but they must be careful not to infringe upon the discretion vested in excise boards, colleges, or inferior tribunals, nor to substitute its discretion for theirs.  The determination by these bodies of any questions within the scope of their jurisdiction is, as it should be, as conclusive and free from control upon *mandamus* as that exercised by the highest jurisdictions in the country.  *People* v. *Medical Soc.*, 32 N. Y. 187, was a case in which a licensed physician was held to be eligible to membership because he had a "diploma," the only qualification required.  That case has no application whatever to the question involved here.  In the present instance, the (defendant) college, in passing on the qualifications of the relator, acted as a *quasi* judicial body, exercising an ample discretion vested in it by the act under which it was incorporated, and its determination cannot be reversed upon *mandamus*.  Stated in general terms, the principle is that *mandamus* will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance; but as to all acts or duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, *mandamus* will not lie.  High, in his work on Extraordinary Legal Remedies, p. 26, says: "And whenever such officers or bodies are vested with discretionary power as to the performance of any duty required at their hands, or where, in reaching a given result of official action, they are necessarily obliged to use some degree of judgment and discretion, while *mandamus* will lie to set them in motion, and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion, nor control or dictate the judgment or decision which shall be reached."  The relator charges bad faith and ill will upon the part of some of the officials of the college, but these allegations do not alter the underlying fundamental principle which controls.  The court cannot re-examine the relator as to his qualifications to practice medicine, nor go over the studies in which he is said to be deficient.  If it attempted to do so, the relator's road would be easy, for, with his experience, imperfect though it may be, he would no doubt pass a better medical examination than any court could be expected to give him.  The law wisely intended no such result.  It leaves the subject where it belongs,—with those qualified to master it.

The application for the writ must be denied, with $10 costs.