{¶ 1} Appellant, Michael W. Rayburn, appeals the judgment of the Fayette County Court of Common Pleas, affirming the decision of appellee, the Ohio Department of Job and Family Services ("ODJFS"), requiring Rayburn to pay $876 per month for his medical care.
 {¶ 2} In 1990, Michael Rayburn was seriously injured in a diving accident that rendered him a paraplegic. He began receiving assistance under the home- and community-based services ("HCBS") waiver program, which is a Medicaid program administered through the Fayette County Department of Job and Family Services ("FCDJFS").
 {¶ 3} In 1992, Rayburn, as settlement for his injuries, began receiving payments from an annuity that originally were $700 per month for life, with payments guaranteed for 30 years, compounded annually at three percent. The annuity named Rayburn as the annuitant, but ownership of the annuity was retained by the insurance company that issued it.[1] As of 2007, the annuity pays Rayburn $1,090.59 per month. *Page 115 
 {¶ 4} On July 3, 2007, the FCDJFS proposed increasing Rayburn's patient liability under the HCBS waiver program from $0 to $876 per month, after learning of his monthly annuity payment. Rayburn requested a state hearing on the proposed increase with the ODJFS. On August 6, 2007, the state hearing officer found the proposed increase to be correct. Rayburn filed an administrative appeal of the state hearing officer's decision with the ODJFS, which affirmed the state hearing officer, and then appealed the ODJFS's decision to the Fayette County Court of Common Pleas, which affirmed the ODJFS.
 {¶ 5} Rayburn now appeals the decision of the common pleas court and assigns the following as error:
 {¶ 6} "The trial court committed prejudicial error as a matter of law in affirming the decision of the Ohio Department of Job and Family Services, essentially depriving appellant from participating in home care based services administered through the Ohio Department of Job and Family Services."
 {¶ 7} Rayburn argues that the common pleas court erred as a matter of law in affirming the ODJFS's decision to increase his patient liability for receiving Medicaid assistance from $0 to $876 per month, after learning of his monthly annuity payment. Specifically, he asserts that "the annuity payment is not a countable resource, nor is it unearned income and was not payable to him for lost wages or pain and suffering."
 {¶ 8} In appeals brought pursuant to R.C. Chapter 119, a common pleas court reviews the order of the administrative agency to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. Castle v. Ohio Dept. ofCommerce, 168 Ohio App.3d 74, 2006-Ohio-3702,858 N.E.2d 843, ¶ 7. When reviewing the common pleas court's decision as to whether an administrative order is supported by such evidence, an appellate court determines whether the common pleas court abused its discretion. Id. However, on questions of law, an appellate court's review is plenary. Id. at ¶ 8.
 {¶ 9} "`Patient liability' means the individual's financial obligation toward the medical cost of care." Ohio Adm. Code 5101:1-39-24(B)(22). The procedure for determining an individual's patient liability is set forth in Ohio Adm. Code 101:1 — 39-24(C)(2), which states:
 {¶ 10} "The administrative agency must determine the individual's patient liability by utilizing the following procedure, in sequence, subsequent to notification of an appropriate level of care, and, if applicable, HCBS waiver agency approval * * *:
 {¶ 11} "(a) Total all income, earned and unearned, of the individual, without applying any exemptions or disregards." *Page 116 
 {¶ 12} The provisions in Ohio Adm. Code 101:1-39-24(C)(2)(b) to (C)(2)(g) provide a number of items that are exempted or disregarded when determining the individual's total income, including "the special individual maintenance needs allowance." Ohio Adm. Code 101:1-39-24(C)(2)(c)(iii). After these exemptions or disregards are subtracted from the total income, the remainder is the individual's monthly patient liability. Ohio Adm. Code 101:1-39-24(C)(2)(h).
 {¶ 13} The FCDJFS, the ODJFS, and the common pleas court found that Rayburn receives a total monthly income of $2,091 per month. This amount consists of the $1,090.59 he receives from his monthly annuity payment, which the administrative agencies and the common pleas court found to be "unearned income" pursuant to Ohio Adm. Code 101:1-39-22.8(C)(4)(g)(i), and the $1,001 per month he receives in Social Security (RSDI) benefits. The agencies and the common pleas court found Rayburn's special individual maintenance needs allowance to be $1,215. They subtracted this amount from his total monthly income of $2,091 and determined Rayburn's monthly patient liability to be $876.
 {¶ 14} The initial question before us is whether the monthly annuity payment that Rayburn receives is, in fact, "unearned income," as the administrative agencies and the common pleas court found, and therefore, a countable resource for purposes of determining his monthly patient liability under Ohio Adm. Code 5101:1-39-24(C)(2).
 {¶ 15} Ohio Adm. Code 5101:1-39-22.8(C)(4) states:
 {¶ 16} "(g) Any annuity provided for under paragraphs (C)(4)(a) to (C)(4)(k) of this rule that has not been annuitized shall be considered an available resource when completing a resource assessment.
 {¶ 17} "(i) An annuity that is making payments in accordance with the provisions in paragraphs (C)(4)(a) to (C)(4)(k) of this rule, at the time of application for Medicaid, will not be considered an available resource. However, anypayments will be considered unearned income to theannuitant." (Emphasis added.)
 {¶ 18} Under its plain terms, Ohio Adm. Code 101:1-39-22.8(C)(4)(g)(i) applies to annuities that are "making payments in accordance with the provisions" in Ohio Adm. Code 101:1-39-22.8(C)(4)(a) to (C)(4)(k). Therefore, in order for Ohio Adm. Code 5101:1-39-22.8(C)(4)(g)(i) to apply in this case, Rayburn's annuity must be "making payments in accordance with the provisions in paragraphs (C)(4)(a) to (C)(4)(k) of [Ohio Adm. Code 5101:1-39-22.8]."
 {¶ 19} While the FCDJFS, the ODJFS, and the common pleas court found that Ohio Adm. Code 101:1-39-22.8(C)(4)(g)(i) applies in this case, they failed to identify the specific provision in paragraphs (C)(4)(a) to (C)(4)(k) of Ohio Adm. Code 5101:1-39-22.8, under which Rayburn's annuity was supposedly making *Page 117 
payments. An examination of the provisions in those paragraphs shows that Rayburn's annuity was not making payments in accordance with any of them.
 {¶ 20} For instance, Ohio Adm. Code 101:1-39-22.8(C)(4)(a) applies to annuities that name the applicant for Medicaid benefits as "the owner and annuitant." While Rayburn's annuity names Rayburn as the annuitant, it does not name him as the owner. Instead, ownership of the annuity was retained by the insurance company that issued it and is now retained by that company's successor. Thus, paragraph (C)(4)(a) does not apply.
 {¶ 21} The provisions in Ohio Adm. Code 101:1-39-22.8(C)(4)(b) to (C)(4)(f) apply in situations where an annuity is purchased for the benefit of the applicant's spouse or for the benefit of both spouses. However, there is no evidence in the record showing that Rayburn has a spouse, and therefore, none of these provisions apply.
 {¶ 22} Ohio Adm. Code 5101:1-39-22.8(C)(4)(h) applies to annuities that contain "a balloon payment provision." Rayburn's annuity does not contain such a provision. Therefore, paragraph (C)(4)(h) does not apply.
 {¶ 23} Ohio Adm. Code 5101:1-39-22.8(C)(4)(i) applies to "[p]rivate annuity agreements * * * not purchased from a bank, insurance company, or other person or entity engaged in the business of the sale of commercial annuities to the public." Rayburn's annuity was purchased from an insurance company that was engaged in the sale of commercial annuities to the public. Therefore, paragraph (C)(4)(i) does not apply.
 {¶ 24} Ohio Adm. Code 5101:1-39-22.8(C)(4)(j) and (C)(4)(k) are related to the issue of improper transfers. Paragraph (C)(4)(j) provides the dates on which improper transfers are considered to have occurred for purposes of Ohio Adm. Code 5101:1-39-22.8. However, the FCDJFS, the ODJFS, and the common pleas court did not find that an improper transfer occurred in this case.
 {¶ 25} Ohio Adm. Code 5101:1-39-22.8(C)(4)(k) states:
 {¶ 26} "If the applicant/recipient or the community spouse is the annuitant of an annuity in which neither individual, at any time, held an ownership interest in the funds used to establish [the annuity,][2] the annuity will not result in an improper transfer if the owner of the annuity fails to make the payments available." *Page 118 
 {¶ 27} As stated, Rayburn is named as the annuitant under the annuity but not its owner. However, even if it is assumed that Rayburn never held, at any time, an ownership interest in the funds used to establish the annuity, the evidence shows that the owner of the annuity made the annuity payments available to Rayburn. Therefore, Ohio Adm. Code 101:1-39-22.8(C)(4)(k) does not apply.
 {¶ 28} In light of the foregoing, Rayburn's annuity is not governed by Ohio Adm. Code 101:1-39-22.8(C)(4)(g)(i) since it is not "[a]n annuity that is making payments in accordance with the provisions in paragraphs (C)(4)(a) to (C)(4)(k) of [Ohio Adm. Code 5101:1-39-22.8]." Therefore, the payments Rayburn receives from that annuity cannot be considered unearned income under Ohio Adm. Code 101:1-39-22.8(C)(4)(g)(i). The common pleas court erred as a matter of law in concluding otherwise. See Castle,168 Ohio App.3d 74, 2006-Ohio-3702, 858 N.E.2d 843, at ¶ 8. However, our analysis does not end here.
 {¶ 29} As stated, Ohio Adm. Code 101:1-39-22.8(C)(4)(k) provides that if an applicant is the annuitant of an annuity in which he did not hold, at any time, an ownership interest in the funds used to establish the annuity, the annuity "will not result in an improper transfer if the owner of the annuity fails to make the payments available." While this provision does not apply in this case because the annuity's owner did not fail to make payments from the annuity available, the provision strongly suggests that such an annuity will constitute an improper transfer where the annuity's owner does make the payments available. Because the owner of Rayburn's annuity made payments from the annuity available to Rayburn, it is likely that the creation of the annuity constituted an improper transfer. See id.
 {¶ 30} Ohio Adm. Code 5101:1-39-07 governs "the treatment of a transfer of resources," including "improper transfers." Id. at paragraphs (A) and (B)(5). On remand, it must be determined whether Rayburn's annuity does in fact constitute an "improper transfer" as defined in Ohio Adm. Code 101:1-39-07(B)(5) and, if so, whether Rayburn is subject to "a restricted Medicaid coverage period." Ohio Adm. Code 101:1-39-07(B)(10) and (I)(1). If it is determined that a restricted Medicaid coverage period applies, the restricted Medicaid coverage period must be calculated in accordance with Ohio Adm. Code 5101:1-39-07(J)(1).
 {¶ 31} Rayburn's assignment of error is sustained to the extent indicated.
 {¶ 32} The judgment of the common pleas court is reversed, and this cause is remanded for further proceedings consistent with this opinion and in accordance with law.
Judgment reversed and cause remanded.
POWELL and YOUNG, JJ., concur.
[1] The annuity was originally issued by Confederation Life Insurance Company. In 1999, the annuity contract was assumed by Pacific Life Insurance Company.
[2] The language in the brackets does not actually appear in the text of Ohio Adm. Code 5101:1-39-22.8(C)(4)(k). The omission of this language appears to have been a typographical error. In any event, we read that administrative code provision in the manner in which it is set forth above. *Page 119